[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Daniela S. was born on February 2000, the daughter of Daniel S. and Aileen J. On February 14, 2000, the Department of Children and Families (hereinafter "DCF") obtained an order of temporary custody. On February 24, 2000 mother appeared with court appointed counsel, and pled nolo contendere to the allegations of neglect. Father failed to appear at either the order of temporary custody ten day hearing, or the plea date for the neglect petition. Service was confirmed on father. On March 7, 2000 father was defaulted for his failure to appear. Daniela was adjudicated neglected and committed to DCF.
On February 27, 2001 her commitment was extended for twelve months, but when father appeared later that day, an attorney was appointed for him, and the court deferred action on DCF's motion to review permanency plan. Subsequently, motions to revoke commitment and to restore custody were filed by father's attorney for father. On May 8, 2001 DCF's motion for drug testing of father by hair analysis was granted. Father was ordered on July 19, 2001 to cooperate with a hair analysis test, and to participate in a parenting class.
On November 5, 2001 father failed to appear for the hearing set for his motions to revoke commitment and to restore custody. Both were denied after hearing at which father's attorney participated. The court further found by clear and convincing evidence that continuing efforts at reunification were no longer appropriate as to either parent, and approved a permanency plan calling for termination of parental rights and adoption.
DCF filed the instant petition, dated January 30, 2002, with respect to Daniela seeking to terminate the parental rights of father and mother. Father appeared with new counsel on February 26, 2002. Mother was defaulted on that date for her failure to appear after service was confirmed. The court did, however, appoint trial counsel from the neglect file as mother's guardian ad litem for purposes of locating mother. DCF's termination petition alleges abandonment as well as failure to CT Page 12627 rehabilitate by both parents.
Daniela's commitment was ordered maintained until further court order on March 7, 2002. On June 6, 2002 the court denied the motion to intervene in the termination proceeding filed by paternal grandparents, and the trial was held. DCF produced one witness, Carolyn W., the child's treatment worker at DCF, and three exhibits. Father submitted a written statement as an exhibit, and made an oral statement to the court, with all parties waiving their right to examine father. Mother failed to appear despite reasonable efforts by her guardian ad litem to secure her attendance.
Adjudicatory issues will be based on facts established as of January 30, 2002, and dispositional issues, if reached, will be based on facts through the date of trial.
DCF claimed that father never has seen his child. Father claimed that he saw her for the better part of her first two days of life. He does not claim that he has seen her since then. He did not inquire of the foster parents or DCF as to his daughter's health or well-being, nor did he attempt any indirect contact with her by cards, gifts, or letters.
Mother showed, initially, some interest in Daniela. She established a visitation schedule with DCF, and pursued it sporadically for a four month period, cancelling or failing to appear for thirteen out of twenty-eight scheduled visits. She has not seen her child since August 25, 2000. Since that date she has not contacted DCF to ask about her daughter, nor has she sent any cards, gifts, or letters to her.
The petitioner has proven by clear and convincing evidence that mother and father abandoned their child Daniela.
DCF also alleged, in the alternative, that the parents failed to rehabilitate after adjudication. With respect to mother, she was given specific steps on February 14, 2000, which were affirmed with her ten days later at the time of her nolo plea, and again on March 7, 2000, when the child was adjudicated neglected. These steps addressed three major issues of concern for mother's parenting requirements. They were her substance abuse history, her mental health issues, and her need to bond with her child through regular visits. As reviewed above, mother did not visit regularly, and soon ceased all contact. Mother was told to cooperate with substance abuse evaluations, treatment, and abstinence. Subsequently, she tested positive for the use of heroin, was admitted to an outpatient program through SCADD, and was discharged for non-attendance. She was referred to Care Plus for mental health services, missed three intake CT Page 12628 appointments prior to entering services, and then was discharged unsuccessfully for non-compliance. All this occurred prior to her disappearance. There is no reason to believe that mother could assume a responsible position in Daniela's life. DCF has proved this alternative ground by clear and convincing evidence.
As to DCF's claim that father failed to rehabilitate, the court finds that specific steps were set for father at the time of the OTC and neglect adjudication, but father was not in court to acknowledge them. There was no evidence to suggest that father complied with them. On March 28, 2001 father signed specific steps. These steps addressed, in part, areas of major concern for him by the petitioner, to wit, substance abuse, cooperation with DCF, and contact with his child. Father agreed to comply with treatment expectations in order to visit, and to visit. He did neither. He was ordered twice by the court to cooperate with drug testing by hair analysis. He shaved his head for the first appointment, and refused tests on other body hair. He then cancelled or failed to appear for the next three appointments. He refused on one occasion to provide a sample for urinalysis, and on two other dates provided invalid samples. When finally tested on September 26, 2001, he tested positive for cocaine and opiates. He cancelled or failed to attend six separate substance abuse evaluations. He never completed such an evaluation, nor entered any treatment. He has not participated in any consistent parenting or counseling programs. The court has no reason to believe that father could ever assume a responsible position in the child's life. DCF has proven this ground as to father by clear and convincing evidence.
Having determined that adjudicatory grounds for termination of both parents' rights exist, the court must consider whether termination is in the best interest of the child. In doing so the court considers and makes the seven statutory findings as follows.
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate reunion of the child with the parent.
Mother was immediately offered visitation, substance abuse evaluations and treatment, individual counseling, and assistance in medical management. Mother rejected or failed to comply with all.
Father was unavailable to any agency, including DCF, for almost one year. When located, he was offered substance abuse evaluation and treatment, which he rejected or failed. He was offered parenting programs which he rejected. He was offered a fatherhood initiative program, which he attended irregularly. He participated in a court ordered psychological CT Page 12629 evaluation, which did not result in any positive change for father. Finally, he was offered the possibility of visits with Daniela, but did not comply.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended.
Reasonable efforts were made.
3. The terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
As expressed above, the parents were given specific steps at different stages of Daniela's case. DCF made timely and appropriate referrals for services for both parents. Both parents rejected or failed to comply with services.
4. The feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person, and any person who has exercised physical care, custody or control for at least one year and with whom the child has developed significant emotional ties.
The child does not know her parents, and has no emotional ties to them. Other than her early hospitalizations, the child has been with one foster home, and regards her foster parents as her parents.
5. The age of the child.
Daniela is two years old, born February 2000.
6. The efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
As discussed above, both parents rejected or failed all offered services. Mother has not seen or attempted to learn of her child since August 25, 2000. Father has not seen his child, if at all, since the CT Page 12630 child was two days old. He has made no attempt at indirect contact.
7. The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent.
No such prevention was found relative to mother. Father claimed that mother told him that the child was with her and well, and to ignore all court and DCF documents to the contrary. Father made no effort to have the child produced for his sight, nor did he ever contact the court or DCF during this period of mother's alleged deceit. Father's claim is not credible, and even if it were, his response was completely unreasonable for anyone asserting paternal rights.
The child does not know either parent. Neither parent has invested himself or herself in the child's life or needs. Neither parent showed a scintilla of desire to change their ways in order to parent Daniela. The child is in a secure placement and it should be permanent.
Accordingly, for all the reasons stated and findings made by clear and convincing evidence, the parental rights of Daniel S. and Aileen J. with respect to Daniela S., born February 7, 2000, are hereby terminated. It is further ordered that the Commissioner of DCF be appointed statutory parent for the child. A permanency plan of adoption by the foster parents is approved. The Commissioner shall file with the court a written report within sixty days of efforts to effectuate such a plan, and shall file such further reports as are required by state and federal law.
JOHN C. DRISCOLL, JUDGE CT Page 12631